IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JODIE WINWOOD,<br><br>    Plaintiff,<br><br>  v.<br><br>JOEL WHITEKO,<br><br>    Defendant. | 2:24-CV-01329-CCW |

**OPINION AND ORDER**

Before the Court is a Motion to Dismiss filed by Defendant Joel Whiteko. ECF No. 8. For the following reasons, the Court will grant in part and deny in part the Motion.

**I.  Background**

This case arises from statements Defendant Joel Whiteko made about Plaintiff Jodie Winwood during a school board meeting and on his Facebook page. The relevant factual allegations, taken as true, are as follows.

On September 5, 2023, the school board for the Belle Vernon Area School District held a Special Voting Meeting to take public comment on its selection of a new superintendent. ECF No. 1-1 ¶¶ 5–7. At the time, Mr. Whiteko was the school board president and was present at the meeting. *Id.* ¶ 9. Ms. Winwood, who had children in the school district, also attended the meeting. *Id.* ¶ 4. During the meeting's public comment period, Ms. Winwood spoke regarding the selection of a new superintendent. *Id.* ¶¶ 7–8. After she finished speaking and was returning to her seat, Mr. Whiteko called her back to the podium, stating that he would "address her." *Id.* ¶ 9.

Mr. Whiteko then publicly stated the following: (a) that a Protection from Intimidation Order ("PFI Order") had been entered against Ms. Winwood because she had intimidated a 15-

year-old girl, (b) that she had engaged in child abuse, (c) that she had told the 15-year-old girl to "go kill [her]self," and (d) that he was "tired of [Ms. Winwood] coming" to school board meetings over the past eight years. *Id.* ¶ 10. Mr. Whiteko then "transitioned to making abusive and intimidating remarks concerning [Ms. Winwood's] requests for special needs accommodations for her children." *Id.* ¶ 12. Specifically, Mr. Whiteko stated that Ms. Winwood had "tied up so much in resources for this school," that "if everybody was like [her], [the school] would be bankrupt." *Id.* ¶ 13. Additionally, before the meeting, Mr. Whiteko shared a copy of the PFI Petition with other school board members and informed them that he intended to openly discuss it with Ms. Winwood during the meeting. *Id.* ¶ 16.

Following the school board meeting, on September 11, 2023, Mr. Whiteko posted statements on his Facebook page concerning Ms. Winwood. *Id.* ¶ 18. Specifically, he wrote that there was "a woman with a PFI who was harassing a 15 year old child and she's going to condemn me and the board" and that "Jodie Winwood deserved everything I said to her. People who live in glass houses should not cast stones. . . . I don't hide from my past and when people come looking for a confrontation I'll stay." *Id.* Ms. Winwood acknowledges that, on August 22, 2022, a PFI Petition was filed against her for allegedly harassing a child, but she contends that the allegations therein are false. *Id.* ¶ 19. She further acknowledges that a temporary PFI Order was issued against her but explains that it was subsequently dismissed on November 17, 2022. *Id.*

On August 7, 2024, Ms. Winwood filed a complaint against Mr. Whiteko in the Westmoreland County Court of Common Pleas, alleging that Mr. Whiteko's public comments "permanently tarnished" her reputation and caused her "ongoing emotional distress." *Id.* ¶ 21. In her Complaint, she brings a First Amendment retaliation claim (Count 3) and a Fourteenth Amendment Substantive Due Process claim (Count 4), both under 42 U.S.C. § 1983, as well as

2

three Pennsylvania state-law defamation claims (Counts 1–3).[1] On September 20, 2024, Mr. Whiteko removed the case to federal court, and on September 27, 2024, he moved to dismiss the claims against him. ECF Nos. 1, 8. The Motion to Dismiss is now fully briefed and ripe for resolution.[2] ECF Nos. 8, 9, 10, 11, 16.

## II.     Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.* Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to

---

[1] Ms. Winwood's Complaint contains two Count 3's. *See* ECF No. 1-1 (listing both her "defamation by implication" claim and her Section 1983 claim for First Amendment claim as Count 3).

[2] The Court has jurisdiction over the Section 1983 claims, which raise federal questions, under 28 U.S.C. § 1331 and supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

3

>the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) ("[A]t least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss.").

### III.  Legal Analysis

#### A.  Mr. Whiteko Is Not Entitled to Legislative Immunity.

In his Motion, Mr. Whiteko asserts that he is entitled to legislative immunity from suit because "he was acting in his capacity as school board president in presiding over the meeting and responding to [Ms. Winwood's] comment." ECF No. 9 at 6. Ms. Winwood responds that Mr. Whiteko is not immune because he was acting in an administrative, not legislative, capacity when he presided over the school board meeting and solicited public comment on the hiring of a new superintendent. ECF No. 10 at 5–8.

Legislative immunity shields legislators and other public officials from suit when they perform legislative functions. *Baraka v. McGreevey*, 481 F.3d 187, 195–96 (3d Cir. 2017). Courts in the Third Circuit "have held that this legislative immunity extends to school boards." *B.P. by and through L.P. v. N. Allegheny Sch. Dist.*, 579 F. Supp. 3d 713, 731 (W.D. Pa. 2022) (Horan, J.) (citing cases). "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Baraka*, 481 F.3d at 195–96 (citing *Bogan v. Scott-Harris*, 523

U.S. 44, 54 (1998)). To constitute legislative activity, it must be "both substantively and procedurally legislative in nature." *Id.* at 198. "An act is substantively legislative if it involves 'policy-making of a general purpose' or 'line-drawing.'" *In re Montgomery Cnty.*, 215 F.3d 367, 376 (3d Cir. 2000). And it "is procedurally legislative if it is undertaken 'by means of established legislative procedures." *Id.*

Here, the Court finds that Mr. Whiteko was not engaged in a substantively legislative function when presiding over the school board meeting. At the meeting, he was taking public comment regarding the hiring of a specific individual, and as such, it "did not involve a matter of general policy, applicable to a variety of circumstances." *Cf. In re Montgomery Cnty.*, 215 F.3d at 376–77 (affirming that legislative immunity did not attach to Montgomery County Salary Board members because their decision to terminate an employee was "a personnel decision that [did] not involve general policy making" and "did not reach beyond the particular occupant of the office."), *with Schlegel v. Koteski*, No. 2:05-cv-1429, 2007 WL 2823476, at *3 (W.D. Pa. Sept. 26, 2007) (McVerry, J.) (finding that legislative immunity attached to school board when they were eliminating an entire position and not merely firing an individual). Indeed, courts in the Third Circuit "have held that administrative decisions, such as personnel decisions, are not protected by legislative immunity, as they are not substantively legislative actions." *Montemuro v. Jim Thorpe Area Sch. Dist.*, No. 3:10-cv-208, 2021 WL 12260766, at *9 (M.D. Pa. Mar. 15, 2021) (citing *Fowler-Nash v. Democratic Caucus of Pa. House of Representatives*, 469 F.3d 328, 340 (3d Cir. 2006)). And because such an act was not legislative in substance, the Court need not consider whether it was also procedurally legislative. *See In re Montgomery Cnty.*, 215 F.3d at 377 (explaining that the Court need not determine whether an act was procedurally legislative when it

5

has already determined that it is not substantively legislative because an act must be both procedurally and substantively legislative for immunity to attach).

Accordingly, the Court finds that Mr. Whiteko was engaged in an administrative function in presiding over the school board meeting, and thus is not entitled to legislative immunity.

### B. Section 1983 Legal Framework

In her Complaint, Ms. Winwood brings two § 1983 claims against Mr. Whiteko, asserting that he violated her First Amendment right to free speech by retaliating against her (Count 3) and that he violated her Fourteenth Amendment due process rights by harming her reputation (Count 4). ECF No. 1-1 ¶¶ 50–72.

Section 1983 establishes a statutory cause of action to vindicate constitutional violations. 42 U.S.C. § 1983. To state a claim under § 1983, plaintiffs must plead that they were "deprived of a federal constitutional or statutory right by a state actor." *Coulter v. Coulter*, No. 23-2222, 2024 WL 163081, at *1 (3d Cir. Jan. 16, 2024); *see Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting 42 U.S.C. § 1983). Thus, courts consider whether a plaintiff has "identif[ied] the exact contours of the underlying right said to have been violated" and "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). Further, courts must also address the state actor element, which requires an individual to "have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Harvey*, 635 F.3d at 609 (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)). The Court will address each of Ms. Winwood's § 1983 claims below.

### 1.   Ms. Winwood Has Failed to State a First Amendment Retaliation Claim Under § 1983.

Mr. Whiteko contends that Ms. Winwood failed to state a First Amendment retaliation claim because his speech was "not sufficient to deter a person of ordinary fitness from engaging in her constitutional rights." ECF No. 9 at 11–12.  Ms. Winwood counters that Mr. Whiteko's comments—which allegedly publicly defamed her and permanently tarnished her reputation—are sufficient to constitute retaliatory speech.  ECF No. 10 at 13–14.

To state a First Amendment retaliation claim, a plaintiff must allege that (1) she engaged in protected conduct, (2) the defendant "engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising her constitutional rights, and (3) a causal link existed between the protected activity and the retaliatory action." *Falcone v. Dickstein*, 92 F.4th 193, 205 (3d Cir. 2024) (cleaned up).  Here, the parties only dispute the second prong—whether Mr. Whiteko's comments were retaliatory and sufficient to deter a person of ordinary firmness.  ECF Nos. 9 at 11 ("Plaintiff has pled that she engaged in constitutionally protected conduct.");  10 at 13 ("Plaintiff engaged in constitutionally protected activity when she spoke at the school board meeting."). Regarding this prong, the parties dispute whether a heightened standard applies to Mr. Whiteko's speech because he was a public official.  *Id.*

"[W]here a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction or adverse regulatory action will imminently follow, such speech does not adversely affect [a person's] First Amendment rights, *even if defamatory*." *Municipal Revenue Servs., Inc. v. McBlain*, 347 F. App'x 817, 825 (3d Cir. 2009).  Such a heightened standard, however, only applies "if the case involves a matter of public concern." *Detschelt v. Norwin Sch. Dist.*, No. 23-1402, 2024 WL 5186485, at *8 (W.D. Pa. Dec. 20, 2024) (Hardy, J.).  A matter is of public concern where "it can be 'fairly considered

7

as relating to any matter of political, social, or other concern to the community.'" *Whitfield v. Chartiers Valley Sch. Dist.*, 707 F. Supp. 2d 561, 579 (W.D. Pa. Apr. 15, 2010) (Cercone, J.) (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)). Courts in the Third Circuit have broadly interpreted "matters of public concern" to include matters that are "a subject of legitimate news interest" or are "a subject of general interest and of value and concern to the public." *Ford v. City of Harrisburg*, No. 1:17-cv-00908, 2019 WL 4412727, at *5 (M.D. Pa. Sept. 16, 2019).

Here, the Court finds that Mr. Whiteko's speech was of public concern because it involved child abuse allegations regarding a student within the school district as well as comments concerning the way in which the district allocates its resources. *See, e.g.*, ECF No. 1-1 ¶¶ 10–12 (alleging that Mr. Whiteko discussed a PFI Order against Ms. Winwood because she engaged in child abuse of a 15-year-old girl); ¶ 13 (alleging that Mr. Whiteko stated that Ms. Winwood had "tied up" so many school resources, and that if everyone was like her, it would bankrupt the school). Such allegations, although related to Ms. Winwood's personal life, involve the treatment of other children and the way in which the school spends its resources—matters which would be of general interest and concern to the community. *See, e.g.*, *Ford*, 2019 WL 4412727, at *4–5 (finding that defendant's speech regarding "stolen valor" and that plaintiff is a "fake Marine" is a matter of "political, social, or other concern to the community."); *cf. Willson v. Yerke*, No. 3:10-cv-1376, 2011 WL 332487, at *4 (M.D. Pa. Jan. 31, 2011) (finding that defendant's speech did not relate to a matter of public concern where the speech consisted of "highly insulting personal slurs that were not directed toward any issue before the public."). Furthermore, Ms. Winwood has failed to point to cases that support her assertion that Mr. Whiteko's speech was "not directed toward any issue before the public." ECF No. 10 at 15. Accordingly, the Court finds that Mr. Whiteko's speech pertained to matters of public concern.

Therefore, to constitute retaliatory speech under the First Amendment, Mr. Whiteko's statements needed to contain a threat, coercion, or other intimidation indicating that a punishment would follow. *See Municipal Revenue Servs*, 347 F. App'x at 825. But Ms. Winwood has not alleged such speech. *See, e.g.*, *Detschelt*, 2024 WL 5186485, at *8 (finding that official school district statement regarding superintendent's offensive Facebook post was not retaliatory because it "in no way communicates 'a threat, coercion, or intimidation…'"). Although Ms. Winwood asserts that Mr. Whiteko made "abusive and intimidating remarks," she fails to explain what these specific remarks were. ECF No. 1-1 ¶ 12. Instead, Ms. Winwood only alleges that Mr. Whiteko reiterated the allegations in the PI Petition against her and suggested that she was taking up too many school resources; but this alleged speech did not contain threatening or coercive remarks. *See id.* ¶¶ 10–13. Therefore, the Court finds that Ms. Winwood has failed to plausibly allege that Mr. Whiteko's speech was retaliatory under the First Amendment.

Accordingly, the Court will dismiss Ms. Winwood's First Amendment retaliation claim in Count 3. It will, however, grant her leave to amend this claim.

> 2. **Ms. Winwood Has Failed to State a Fourteenth Amendment Due Process Claim Under § 1983.**

In her Complaint, Ms. Winwood asserts a Fourteenth Amendment substantive due process claim for harm to her reputation, alleging that Mr. Whiteko "deprived [her] of her liberty interest in reputation while she was in the exercise of her constitutional right to freedom of speech." ECF No. 1-1 ¶ 69. To state a due process claim for deprivation of liberty interest in reputation, a plaintiff "must show a stigma to [her] reputation *plus* deprivation of some additional right or interest." *Dondero v. Lower Milford Twp.*, 5 F.4th 355, 360 (3d Cir. 2021) (explaining that this is known as the "stigma-plus test."). To satisfy the stigma prong, "the purportedly stigmatizing statements must be public and false." *Id.* (cleaned up). To satisfy the plus prong, a plaintiff must

show a "deprivation of some additional right or interest" apart from the reputational harm. *Kocher v. Larksville Borough*, 548 F. App'x 813, 819 (3d Cir. 2013). A plaintiff may satisfy the stigma-plus test where she adequately alleges a First Amendment retaliation claim in addition to public, defamatory statements. *Walton v. Westmoreland Cnty.*, No. 21-860, 2024 WL 36971, at *17 (W.D. Pa. Jan. 3, 2024) (Fischer, J.).

Here, Ms. Winwood asserts that she has satisfied the stigma-plus test because Mr. Whiteko's speech was public, false, and deprived her of her First Amendment right to free speech. ECF No. 10 at 16–17. Mr. Whiteko contends that Ms. Winwood has failed to satisfy the stigma-plus test because she has failed to state a First Amendment retaliation claim and has not alleged any other additional deprivation. ECF No. 9 at 13–14. Although Ms. Winwood adequately alleges that Mr. Whiteko's speech was public and false, she has failed to allege the deprivation of some additional interest. She asserts that the additional interest is her First Amendment right to free speech, but the Court has already found that she failed to state such a claim. *See* Part III.B.1. Moreover, Ms. Winwood has not alleged the deprivation of any other interest. Therefore, she has failed to satisfy the stigma-plus test and has not adequately stated a due process claim.

Accordingly, the Court will dismiss Ms. Winwood's due process claim in Count 4, but it will grant her leave to amend this claim.

### C. Ms. Winwood's State-Law Defamation Claims.

Ms. Winwood's remaining claims in Counts 1 through 3 arise under state law. The Court declines to exercise supplemental jurisdiction over these claims because it will dismiss all claims

over which it has original jurisdiction.[3]  *See* 28 U.S.C. § 1367(c), (c)(3).  Accordingly, the Court dismisses these claims without prejudice.

### IV. Conclusion

For the forgoing reasons, IT IS HEREBY ORDERED that Mr. Whiteko's Motion to Dismiss, ECF No. 8, is GRANTED, and Ms. Winwood's Complaint is DISMISSED WITHOUT PREJUDICE.  IT IS FURTHERED ORDERED that Ms. Winwood is GRANTED leave to amend the allegations in her First and Fourteenth Amendment claims (Counts 3 and 4) only, and she shall file any amended complaint on or before April 21, 2025.  If Ms. Winwood does not timely file an amended complaint, the dismissals without prejudice will be converted to with prejudice without further action by the Court.

DATED this 31st day of March, 2025.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):
All Counsel of Record

cc (via US Mail):
Jodie Winwood
Pro Se
4 Collingate Drive
West Newton, PA 15089

---

[3] In his Motion, Mr. Whiteko asserts that he is entitled to high public official immunity for his state-law defamation claims.  ECF No. 9 at 7–10. But because the Court declines to exercise jurisdiction over these state-law claims, it will not address whether Mr. Whiteko is immune from suit for these claims.