IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JODIE WINWOOD,<br><br>    Plaintiff,<br><br>  v.<br><br>JOEL WHITEKO,<br><br>    Defendant. | 2:24-CV-01329-CCW |

**OPINION**

Before the Court is a Motion to Dismiss filed by Defendant Joel Whiteko. ECF No. 21. For the following reasons, the Court will grant the Motion.

I.   **Background**

This case arises from statements Defendant Joel Whiteko made about Plaintiff Jodie Winwood during a school board meeting and on his Facebook page. The relevant factual allegations, taken as true, are as follows.

On September 5, 2023, the school board for the Belle Vernon Area School District held a Special Voting Meeting to take public comment on its selection of a new superintendent. ECF No. 20 ¶¶ 16–17. At the time, Mr. Whiteko was the school board president and attended the meeting. *Id.* ¶ 13. Ms. Winwood also attended the meeting and spoke about the selection of a new superintendent. *Id.* ¶¶ 19–20. After she finished speaking and was returning to her seat, Mr. Whiteko called her back to the podium, stating that he would "address her." *Id.* ¶ 21.

Mr. Whiteko then publicly stated the following: (a) that a Protection from Intimidation Order ("PFI Order") had been entered against Ms. Winwood because she had intimidated a 15-year-old girl, (b) that she had told the 15-year-old girl to "go kill [her]self," and (d) that he was

"tired" of Ms. Winwood coming to school board meetings over the past eight years. *Id.* ¶¶ 23–26. Mr. Whiteko then stated that Ms. Winwood had "tied up so much in resources for this school," that "if everybody was like [her], [the school] would be bankrupt." *Id.* ¶ 26.

Following the school board meeting, on September 11, 2023, Mr. Whiteko posted statements on his Facebook page concerning Ms. Winwood. *Id.* ¶ 28. Specifically, he wrote that there was "a woman with a PFI who was harassing a 15-year old child and she's going to condemn me and the board" and that "Jodie Winwood deserved everything I said to her. People who live in glass houses should not cast stones. . . . I don't hide from my past and when people come looking for a confrontation I'll stay." *Id.* Ms. Winwood acknowledges that, on August 22, 2022, a PFI Petition was filed against her for allegedly harassing a child, but she contends that the allegations therein are false. *Id.* ¶¶ 29–31. She further acknowledges that a temporary PFI Order was issued against her but explains that it was subsequently dismissed on November 17, 2022. *Id.*

On August 7, 2024, Ms. Winwood filed a complaint against Mr. Whiteko in the Westmoreland County Court of Common Pleas, alleging a First Amendment retaliation claim, a Fourteenth Amendment substantive due process claim, both under 42 U.S.C. § 1983, as well as three Pennsylvania state-law defamation claims. ECF No. 1-1. On September 20, 2024, Mr. Whiteko removed the case to federal court, and on September 27, 2024, he moved to dismiss the claims against him. ECF Nos. 1, 8. The Court granted Mr. Whiteko's motion to dismiss, but it gave Ms. Winwood leave to amend her First and Fourteenth Amendment claims only. ECF No. 19. On May 5, 2025, Ms. Winwood filed an Amended Complaint in which she brings a First Amendment retaliation claim, under 42 U.S.C. § 1983 (Count I); an associational discrimination claim, under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (Count II); and three Pennsylvania state-law claims, including a claim for violating Article 1 of the Pennsylvania

Constitution (Count III); intentional infliction of emotional distress (Count IV); and willful misconduct (Count V). ECF No. 20. Mr. Whiteko has moved to dismiss the Amended Complaint, ECF No. 21, and with briefing complete, the Motion is ripe for resolution.[1] ECF Nos. 22, 23.

## II. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.* Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

---

[1] The Court has jurisdiction over the § 1983 claim and the ADA claim, which raise federal questions under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) ("[A]t least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss.").

### III. Legal Analysis

#### A. The Court Will Dismiss Ms. Winwood's First Amendment Retaliation Claim.

##### 1. Section 1983 Legal Framework

In her Amended Complaint, Ms. Winwood brings a § 1983 claim against Mr. Whiteko, asserting that he violated her First Amendment right to free speech by retaliating against her (Count I). ECF No. 20 ¶¶ 35–45.

Section 1983 establishes a statutory cause of action to vindicate constitutional violations. 42 U.S.C. § 1983. To state a claim under § 1983, plaintiffs must plead that they were "deprived of a federal constitutional or statutory right by a state actor." *Coulter v. Coulter*, No. 23-2222, 2024 WL 163081, at *1 (3d Cir. Jan. 16, 2024); *see Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting 42 U.S.C. § 1983). Thus, courts consider whether a plaintiff has "identif[ied] the exact contours of the underlying right said to have been violated" and "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). Further, courts must also address the state actor element, which requires an individual to "have exercised power possessed by virtue of state law and made possible only because the

wrongdoer is clothed with the authority of state law." *Harvey*, 635 F.3d at 609 (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)).

### 2. Ms. Winwood Has Failed to State a First Amendment Retaliation Claim Under § 1983.

Mr. Whiteko contends that Ms. Winwood failed to state a First Amendment retaliation claim because his speech was not "sufficient to deter a person of ordinary firmness from engaging in her constitutional rights." ECF No. 22 at 6–7. Ms. Winwood counters that Mr. Whiteko's comments—which allegedly publicly defamed her and permanently tarnished her reputation—are sufficient to constitute retaliatory speech. ECF No. 23 at 2–8.

To state a First Amendment retaliation claim, a plaintiff must allege that (1) she engaged in protected conduct, (2) the defendant "engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising her constitutional rights, and (3) a causal link existed between the protected activity and the retaliatory action." *Falcone v. Dickstein*, 92 F.4th 193, 205 (3d Cir. 2024) (cleaned up). Here, Mr. Whiteko only disputes the second prong—whether his comments were retaliatory and sufficient to deter a person of ordinary firmness. ECF No. 22 at 6 ("Plaintiff has pled that she engaged in constitutionally protected conduct."). Regarding this prong, the parties dispute whether a heightened standard applies to Mr. Whiteko's speech because he was a public official.

"[W]here a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction or adverse regulatory action will imminently follow, such speech does not adversely affect [a person's] First Amendment rights, *even if defamatory*." *Mun. Revenue Servs., Inc. v. McBlain*, 347 F. App'x 817, 825 (3d Cir. 2009) (emphasis in original). Such a heightened standard, however, only applies "if the case involves a matter of public concern." *Detschelt v. Norwin Sch. Dist.*, No. 23-1402, 2024 WL

5

5186485, at *8 (W.D. Pa. Dec. 20, 2024) (Hardy, J.).  A matter is of public concern where "it can be 'fairly considered as relating to any matter of political, social, or other concern to the community.'" *Whitfield v. Chartiers Valley Sch. Dist.*, 707 F. Supp. 2d 561, 579 (W.D. Pa. Apr. 15, 2010) (Cercone, J.) (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)).  Courts in the Third Circuit have broadly interpreted "matters of public concern" to include matters that are "a subject of legitimate news interest" or are "a subject of general interest and of value and concern to the public." *Ford v. City of Harrisburg*, No. 1:17-cv-00908, 2019 WL 4412727, at *5 (M.D. Pa. Sept. 16, 2019).

Here, the Court previously found that Mr. Whiteko's speech was of public concern because it involved child abuse allegations regarding a student within the school district as well as comments concerning the way in which the district allocates its resources.  *See* ECF No. 19 at 7–9.  In her Amended Complaint, Ms. Winwood has not added new allegations that change the Court's decision.  Instead, the Amended Complaint alleges that Mr. Whiteko spoke on a matter of public concern because his speech involved allegations that a parent in the school district intimidated a child and the way in which the district allocates its resources.  ECF No. 20 ¶ 22 (alleging that Mr. Whiteko discussed a PFI Order against Ms. Winwood because she intimidated a 15-year-old girl);  ¶ 26 (alleging that Mr. Whiteko stated that Ms. Winwood had "tied up" so many school resources, and that if everyone was like her, it would bankrupt the school).  Such allegations, although related to Ms. Winwood's personal life, involve the treatment of other children and the way in which the school spends its resources—matters which would be of general interest and concern to the community.  *See, e.g.*, *Ford*, 2019 WL 4412727, at *4–5 (finding that defendant's speech regarding "stolen valor" and that plaintiff is a "fake Marine" is a matter of "political, social, or other concern to the community");  *cf. Willson v. Yerke*, No. 3:10-cv-1376,

2011 WL 332487, at *4 (M.D. Pa. Jan. 31, 2011) (finding that defendant's speech did not relate to a matter of public concern where the speech consisted of "highly insulting personal slurs that were not directed toward any issue before the public"). Accordingly, the Court again finds that Mr. Whiteko's speech pertained to matters of public concern.

Therefore, to constitute retaliatory speech under the First Amendment, Mr. Whiteko's statements needed to contain a threat, coercion, or other intimidation indicating that a punishment would follow. *See Mun. Revenue Servs.*, 347 F. App'x at 825. In her original complaint Ms. Winwood failed to allege such speech, and she has not fixed this deficiency in her Amended Complaint. ECF Nos. 19, 20. *See, e.g.*, *Detschelt*, 2024 WL 5186485, at *8 (finding that official school district statement regarding superintendent's offensive Facebook post was not retaliatory because it "in no way communicates 'a threat, coercion, or intimidation'"). Ms. Winwood only alleges that Mr. Whiteko reiterated the allegations in the PFI Petition against her and suggested that she was taking up too many school resources; but this alleged speech did not contain threatening or coercive remarks. *See* ECF No. 20 ¶¶ 22–26. Therefore, the Court finds that Ms. Winwood has failed to plausibly allege that Mr. Whiteko's speech was retaliatory under the First Amendment.

Accordingly, the Court will dismiss Ms. Winwood's First Amendment retaliation claim. And because any amendment would be inequitable and futile, the dismissal will be with prejudice. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (explaining that a court should generally give a plaintiff the opportunity to amend a deficient complaint, unless doing so would be "inequitable or futile."); *Kilinc v. Tracfone Wireless Inc.*, 757 F. Supp. 2d 535, 540 (W.D. Pa. 2010) (McVerry, J.) (dismissing with prejudice where plaintiff did not have a plausible claim against either defendant and "[a]ny attempt to amend the complaint

would be futile and would subject the Defendants and the Court to unnecessary and unwarranted time, effort and expense.").

      **B.    The Court Will Dismiss Ms. Winwood's Associational Discrimination Claim.**

In her Amended Complaint, Ms. Winwood brings for the first time an associational discrimination claim under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. She alleges that Mr. Whiteko's speech "discriminated against [her] for her association with her three disabled children." ECF No. 20 ¶ 51. Mr. Whiteko argues that Ms. Winwood cannot bring such a claim against him individually, and he asserts that she has failed to allege that he was aware of the disabilities of Ms. Winwood's children and that she was denied a benefit or service. ECF No. 22 at 8–9. In response, Ms. Winwood "concedes the points made in Defendant's motion to dismiss regarding a cause of action under Title II of the Americans with Disabilities Act and submits no further argument."). The Court will dismiss Ms. Winwood's associational discrimination in light of her concession, and, in addition, because she was not granted leave to amend her complaint to include this claim. ECF No. 19 ("Ms. Winwood is GRANTED leave to amend the allegations in her First and Fourteenth Amendment claims (Counts 3 and 4) only."). Under these circumstances, amendment would be inequitable, and so the dismissal will be with prejudice.

      **C.    Ms. Winwood's State-Law Claims.**

Ms. Winwood's remaining claims in Counts III through V arise under state law. The Court declines to exercise supplemental jurisdiction over these claims because it will dismiss all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Accordingly, the Court will remand these claims to state court.

## IV. Conclusion

For the forgoing reasons, the Court will grant Mr. Whiteko's Motion to Dismiss, ECF No. 21, and dismiss with prejudice Ms. Winwood's Amended Complaint, ECF No. 20.

Furthermore, the Court will remand Ms. Winwood's state-law claims in Counts III–V to the Westmoreland County Court of Common Pleas.

DATED this 4th day of September, 2025.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):
All Counsel of Record